IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

TYRONE EUGENE LOCKE,
ADC #127715                                                                                    PLAINTIFF

V.                          CASE NO. 1:18-CV-21-DPM-BD

STEPHEN WILLIAMS, et al.                                                               DEFENDANTS

## RECOMMENDED DISPOSITION

### I.      Procedures for Filing Objections

This Recommended Disposition ("Recommendation") has been sent to Judge D.P. Marshall Jr. Any party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation.

If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may waive the right to appeal questions of fact.

### II.     Background

Plaintiff Tyrone Eugene Locke, an inmate now at the Delta Regional Unit of the Arkansas Department of Correction ("ADC"), filed this lawsuit without the help of a lawyer under 42 U.S.C. § 1983. (Docket entry #1) In his complaint, Mr. Locke alleges that, while he was housed at the North Central Unit, Defendant Gillihan failed to ensure that the barbers were trained properly. As a result, Mr. Locke alleges, he contracted an

infection from unsanitary hair clippers used by inmate barbers at the ADC.[1] (#2)

Mr. Locke has filed a second motion for summary judgment, and Defendant Gillihan has responded. (#47, #50) In addition, Defendant Gillihan has filed a motion for summary judgment, and Mr. Locke has responded. (#53, #59) Both motions are now ripe for review.

### III. Standard

Summary judgment means that the Court rules in favor of a party without the need for a trial. A party is entitled to summary judgment only if the evidence shows that there is no real dispute about any fact that is important to the outcome of the case. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322B23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986).

### IV. Facts

On August 28, 2017, Mr. Locke was transferred to the North Central Unit. (#2, p.14) Within the first week of his transfer, an inmate barber cut Mr. Locke's hair. Three days later, Mr. Locke noticed bumps on the back of his head and neck. (#2, p.14) He believes that he contracted a bacterial infection from this first hair cut at the North Central Unit that caused sores on his head, face, chest, legs, buttocks, and penis. (#2, p.5)[2] According to Mr. Locke, the inmate barbers do not clean their clippers after each

---

[1] All other claims and Defendants have been dismissed. (#11, #52)

[2] Mr. Locke also alleges that 10 years ago inmate barbers at the East Arkansas Regional

haircut. (#39, p.2) It is undisputed that when Mr. Locke was allegedly infected, Defendant Gillihan was an ADC employee and was responsible for supervising inmate barbers at the ADC. (#55)

In February of 2018, Mr. Locke told Defendant Gillihan that he believed his head had become infected from unsanitary hair clippers. (#2, p.3) According to Mr. Locke, Defendant Gillihan looked at his head and said, "OMG . . . one of [the] barbers forgot to clean the clippers." (#2, p.3) Defendant Gillihan allegedly told Mr. Locke that he would have a "long talk with all the barbers." (#2, p.3)

In support of his motion for summary judgment, Defendant Gillihan offers the affidavit of Chris Brandon, a Lieutenant at the North Central Unit, who is tasked with training inmates about safety and sanitation. Mr. Brandon testifies that inmate barbers receive between 50 and 72 hours of training, and only inmates who undergo training and demonstrate sufficient skills are chosen to become barbers. Every barber attends weekly safety briefings, which include instructions on properly cleaning tools and keeping their work area clean. According to Mr. Brandon, other than the allegations made by Mr. Locke and Mr. Lewis,[3] no similar incidents have been reported over the past 10 years. (#53-1)

---

Unit cut his hair with unsanitary hair clippers and he contracted a bacterial infection which is a "life-time illness." (#2, p.8, 11)

3 Case no. 1:18-cv-22-DPM-BD.

3

## V.     Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment includes a right to safe and humane conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Mr. Locke can prevail on his claim against Defendant Gillihan only if he establishes that Defendant Gillihan was deliberately indifferent to a known, substantial risk of harm.

Although mere negligence cannot support a claim of deliberate indifference, the law does not require a finding that a defendant acted, "for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835. Holding a defendant liable for deliberate indifference requires a finding that the defendant acted with a "highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoting *Choate v. Lockhart*, 7 F.3d, 1370, 1374 (8th Cir. 1993)).

If all evidence of deliberate indifference is circumstantial, a plaintiff must show not only that the official was aware of facts that *should have* alerted him that there was a substantial risk of harm, but also, that he *actually drew* that inference that there was a substantial risk. *Id*. at 644 (citing *Farmer*, 511 U.S. at 837).

Failure to properly train can result in a finding of deliberate indifference, but in the circumstances in this case, Defendant Gillihan can be held liable for failing to train inmate barbers only if there is evidence that the need for more or different barber training was so obvious, and the inadequacy so likely to result in the violation of constitutional

4

rights, that Defendant Gillihan can reasonably be said to have been deliberately indifferent to the need. *Ambrose v. Young*, 4754 F.3d 1070, 1080 (8th Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 978 (1989)).

Here, the evidence falls far short. Mr. Locke asserts that Defendant Gillihan is "responsible for the barbers' incompetence because they have no license or vocational training." (#2, p.8) Defendant Gillihan offers proof, however, that ADC barbers receive 50 to 72 hours of training and weekly instructions on sanitizing their tools and keeping their work areas clean.

In response, Mr. Locke argues that this training is nonetheless insufficient because correctional officers, rather than licensed cosmetologists, are the instructors. (#59, p.5) There is no evidence in the record, however, to support a finding that barber training must be conducted by a licensed cosmetologist to be deemed constitutionally adequate.

The undisputed evidence demonstrates that the inmate barbers received training and instruction on cleaning hair clippers. Mr. Locke argues that the barbers who cut his hair did not, in fact, clean their clippers. (#59) But even if this is true, there is no allegation, much less evidence, that Defendant Gillihan knew that the barbers were not properly cleaning hair clippers. In fact, Mr. Locke admits that he did not alert Defendant Gillihan to the situation until almost six months after he was allegedly infected. Defendant Gillihan cannot be found deliberately indifferent to a situation he had no prior knowledge of.

5

Even if Mr. Locke could prove that the training inmate barbers received was insufficient—and that Defendant Gillihan knew the training was insufficient—he would also have to show that his infection was caused by unsanitary barbering equipment. See *Andrews v. Folwer*, 98 F.3d 1069, 1077 (1996) (citing *City of Canton*, 489 U.S. at 391). In his statement of facts, however, Mr. Locke concedes that he suffered this same condition ten years earlier in a previous incarceration at the ADC. (#48) He further alleges that his condition is a "life-time illness." (#2)

Mr. Locke does offer evidence to support his claim, including: a "bloody cap" to show his head infection (#47); the affidavit of an inmate with a skin condition that the inmate believes resulted from a haircut at the Malvern Unit of the ADC (#59, p.3); the affidavit of another inmate who states that he has never witnessed inmate barber training and also has "bumps" (#59, p.4); and an affidavit from an inmate who has bumps on his head that he attributes to unsanitary hair clippers (#61). There is no reason to doubt that Mr. Locke has a skin condition, but he has not come forward with evidence that would persuade a reasonable fact-finder that the hair clippers used by inmate barbers at the North Central Unit caused his problem.

## VI.     Conclusion

The Court recommends Mr. Locke's motion for summary judgment (#47) be DENIED. Defendant Gillihan's motion for summary judgment (#53) should be GRANTED, and the case dismissed. Mr. Locke's pending motion for subpoena (#60)

should be DENIED, as moot.

DATED, this 24th day of August, 2018.

_____
UNITED STATES MAGISTRATE JUDGE